**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

SHIVA STEIN,                                              :
                                                         :
             Plaintiff,                          :    Civil Action No. 1:22-cv-00436
                                                         :
v.                                                       :
                                                         :    **COMPLAINT FOR VIOLATIONS OF**
GCP APPLIED TECHNOLOGIES, INC.,                          :    **SECTIONS 14(a) AND 20(a) OF THE**
PETER A. FELD, SIMON BATES, JANET P.                     :    **SECURITIES EXCHANGE ACT OF**
GIESSELMAN, CLAY H. KIEFABER,                            :    **1934**
ARMAND F. LAUZON, MARRAN H.                              :
OGILVIE, ANDREW M. ROSS, LINDA J.                        :    **JURY TRIAL DEMANDED**
WELTY, and ROBERT H. YANKER,                             :
                                                         :
             Defendants.                        :

--------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against GCP, Inc. ("GCP or the "Company") and the members GCP board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of GCP by Compagnie de Saint-Gobain S.A. ("Saint-Gobain") and its affiliates.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on January 18, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Cyclades Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Saint-Gobain, will merge with and into GCP with GCP surviving the merger and becoming a wholly owned subsidiary of Saint-Gobain (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each GCP common share issued and outstanding will be converted into the right to receive $32.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked GCP stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, RBC Capital Markets, LLC ("RBC") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to GCP stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because GCP is traded on the New York Stock Exchange, headquartered in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of GCP common stock and has held such stock since prior to the wrongs complained of herein.

10.    Individual Defendant Peter A. Feld has served as a member of the Board since 2020 and is the Chairman of the Board.

11.    Individual Defendant Simon Gates has served as a member of the Board since 2020 and is the Company's President and Chief Executive Officer.

12.    Individual Defendant Janet P. Giesselman has served as a member of the Board since 2020.

13.    Individual Defendant Clay H. Kiefaber has served as a member of the Board since 2019.

14.     Individual Defendant Armand F. Lauzon has served as a member of the Board since 2020.

15.     Individual Defendant Marran H. Ogilvie has served as a member of the Board since 2019.

16.     Individual Defendant Andrew M. Ross has served as a member of the Board since 2020.

17.     Individual Defendant Linda J. Welty has served as a member of the Board since 2020.

18.     Individual Defendant Robert H. Yanker has served as a member of the Board since 2020.

19.     Defendant GCP is incorporated in Delaware and maintains its principal offices at 2325 Lakeview Parkway, Alpharetta, Georgia 30009.  The Company's common stock trades on the New York Stock Exchange under the symbol "GCP."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

22.     GCP produces and sells specialty construction chemicals and specialty building materials worldwide. Its Specialty Construction Chemicals segment offers concrete admixtures under the CONCERA, CLARENA, ADVA, CLARENA RC40, STRUX, MIRA, TYTRO, POLARSET, ECLIPSE, DARACEM, DARASET, DCI, RECOVER, WRDA, and ZYLA brands; admixtures for decorative concrete under the PIERI brand; concrete production management and

4

control systems under the VERIFI brand; engineered concrete slab systems under the DUCTILCRETE brand; and cement additives under the OPTEVA HE, TAVERO VM, CBA, SYNCHRO, HEA2, TDA, and ESE brands. The Company's Specialty Building Materials segment provides building envelope products to protect structures from water, and manages air and vapor transmission through building walls under the BITUTHENE, PREPRUFE, ADPRUFE, HYDRODUCT, ADCOR, SILCOR, PERM-A-BARRIER, ELIMINATOR, RIW, and INTEGRITANK brands; and residential building products comprising specialty roofing membranes and flexible flashings under the ICE & WATER SHIELD, TRI-FLEX, ULTRA, and VYCOR brands. This segment also offers fire protection products under the MONOKOTE brand; chemical grouts for repair and remediation in waterproofing and soil stabilization applications under the DE NEEF, HYDRO ACTIVE, SWELLSEAL, and DE NEEF PURe brands; cementitious grouts and mortars for under filling and gap filling purposes under the BETEC brand; and specialty flooring products, such as flooring moisture barriers and installation products under the KOVARA and ORCON brands. The Company was incorporated in 2015 and is headquartered in Alpharetta, Georgia.

23.     On December 6, 2021, GCP announced that they had entered into a proposed transaction:

> ALPHARETTA, Ga., Dec. 06, 2021 (GLOBE NEWSWIRE) - - **GCP Applied Technologies Inc. (NYSE: GCP)** (GCP or the Company), today announced that it has entered into a definitive agreement pursuant to which Saint-Gobain will acquire all of the outstanding shares of GCP Applied Technologies for $32.00 per share, in cash, in a transaction valued at approximately $2.3 billion (approximately €2.0 billion).
>
> The agreed upon price represents a premium of 39% above the volume-weighted average price per GCP share for the 30-trading days ended on the undisturbed date of November 30, 2021. The business combination has been unanimously approved by the

Boards of Directors of Saint-Gobain and GCP Applied Technologies respectively. Saint-Gobain has obtained undertakings from Starboard and Standard Investments (formerly known as 40 North) / Standard Industries to vote their respective stakes of 8.9% and 24.2% in favor of the transaction.

Closing of the transaction is subject to GCP Applied Technologies shareholders' approval, antitrust approvals and satisfaction of other customary closing conditions with closing expected in the second half of 2022.

**Simon Bates, President and Chief Executive Officer of GCP, commented:**
*"Today opens an exciting new era in GCP's rich history, for our shareholders, customers and employees. We are thrilled for GCP to join Saint-Gobain, the ideal strategic partner to support our growth. Thanks to its global platform, significant resources as well as commercial and innovation expertise, Saint-Gobain is perfectly positioned to ensure the success of GCP's operations and people over the long term."*

**Peter Feld, Independent Chair of the Board of GCP, added:**
*"The Board of GCP is unanimously supportive of this transaction and believes it provides full and fair value to all shareholders of GCP. Saint-Gobain represents a great partner for GCP and we are pleased to have reached this agreement. The Board would like to thank our leadership team and our dedicated employees for their significant contributions to GCP. These efforts have allowed us to achieve this great result."*

**Benoit Bazin, Chief Executive Officer of Saint-Gobain, commented:**
*"The acquisition of GCP is an excellent and significant step for Saint-Gobain to further reinforce its worldwide leadership in construction chemicals and strengthen its geographic presence in North America and emerging markets, both objectives being at the core of our "Grow & Impact" strategic plan. We are very happy and truly excited to welcome into Saint-Gobain the GCP teams, with whom we share the same industrial and commercial culture. Given GCP's leadership in its sector with well-recognized brands, expertise, know-how and businesses that are highly complementary with Chryso and CertainTeed, we are convinced that this great combination will create a very strong platform, with improved reach, value added solutions and services delivered to our customers. Leveraging Saint-Gobain's scale and innovation capabilities, with GCP's attractive geographic footprint, this*

*transaction will result in enhanced profitable growth and value creation for our shareholders and will provide attractive development opportunities for both teams around the world."*

RBC Capital Markets, LLC is acting as financial advisor, and Latham & Watkins LLP is acting as legal counsel to GCP in connection with the transaction.

\* \* \*

24.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that GCP's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

25.     On January 18, 2022, GCP filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning GCP Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by GCP management and relied upon by RBC in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness

opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company.  Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that GCP management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted Gross Profit, Adjusted EBIT, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning RBC's Financial Analysis*

31.     With respect to RBC's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the individual metrics for the companies observed by RBC in the analysis, including implied enterprise value and EBITDA for each selected public company.

32.     With respect to RBC's *Selected Precedent Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual metrics for the transactions observed by RBC in the analysis, including the implied purchase prices announced on such date for the selected transaction, the implied enterprise value and EBITDA of each selected target company.

33.     With respect to RBC's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of terminal multiples ranging from 11.0x to 13.0x; (iii) the

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

inputs and assumptions underlying the range of discount rates ranging from 10.5% to 12.5%; and (iv) the estimated weighted average cost of capital of GCP.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

analysis that were prepared by RBC and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of GCP within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of GCP, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of GCP, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of GCP, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 18, 2022                          **MELWANI & CHAN LLP**

                                 By:   /s *Gloria Kui Melwani*
                                       _____
                                       Gloria Kui Melwani (GM5661)
                                       1180 Avenue of Americas, 8th Fl.
                                       New York, NY 10036
                                       Telephone: (212) 382-4620
                                       Email: gloria@melwanichan.com

                                       *Attorneys for Plaintiff*